**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| (1) STATE OF OKALHOMA *ex rel.* Gentner Drummond, Attorney General of Oklahoma, | |
| *Plaintiff*, | Case No. CIV-25-322-GLJ |
| v. | (formerly Adair County Case No. CJ-25-65) |
| (1) 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company; (2) CORTEVA, INC.; (3) DUPONT DE NEMOURS, INC., f/k/a DOWDUPONT, INC.; (4) E. I. DU PONT DE NEMOURS AND COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise; (5) THE CHEMOURS COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise; and; (6) THE CHEMOURS COMPANY FC, LLC, individually and as successor in interest to DuPont Chemical Solutions Enterprise, | |
| *Defendants*. | |

## NOTICE OF REMOVAL

Defendant 3M Company ("3M"), by undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§, 1441, 1442(a)(1), and 1446, from the District Court of Adair County, Oklahoma, to the United States District Court for the Eastern District of Oklahoma, Northern Division. As grounds for removal, 3M states as follows.

## PRELIMINARY STATEMENT

1.      Plaintiff State of Oklahoma ("State") seeks to hold 3M and other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, and/or selling per- and

1

polyfluoroalkyl substances ("PFAS") and PFAS-containing products, which purportedly have resulted in alleged contamination of the State's natural resources and harm to the State's consumers. *See* First Amended Petition ("Am. Petition") ¶ 1. (The First Amended Petition is attached as Exhibit 1).

2.      The Amended Petition purports to allege that the State is not "seeking any damages, remediation, restoration, and/or other relief with respect to any contamination from PFAS that is related to the manufacture and use of" aqueous film-forming foams ("AFFF,"), a firefighting foam that is highly effective for extinguishing fuel-based fires. Am. Petition ¶ 6. However, the State's requests for relief nevertheless encompass damages attributable, whether in whole or in part, to PFAS-containing AFFF developed and sold to the U.S. military in accordance with rigorous military specifications ("MilSpec AFFF") issued by the Department of Defense ("DoD"). As described below, 3M's colorable government contractor defense with respect to MilSpec AFFF provides 3M with justifiable grounds to remove this action. In any case, the State cannot prevent 3M "from raising the production of MilSpec AFFF as a defense or an alternate theory" of the State's claimed damages. *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021).

3.      The alleged PFAS contamination in Oklahoma plausibly has resulted at least in part from the use, storage, and/or disposal of MilSpec AFFF. This alleged contamination plausibly overlaps and is commingled with PFAS from MilSpec AFFF used at military facilities in Oklahoma. In fact, the State has filed a putatively separate action (the "AFFF case") expressly seeking to recover for alleged PFAS contamination of the State's natural resources and property from AFFF used at military facilities in Oklahoma. *See* Complaint, *State of Oklahoma ex rel. Drummond v. 3M Co., et al.*, Case No. 24-cv-00308 (D.S.C. Jan. 21, 2024) ("AFFF Complaint")

(attached as Exhibit 2). To the extent that the State's alleged injuries in this action arise from MilSpec AFFF in whole or in part, 3M intends to assert the federal government contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), which bars the State from establishing tort liability for the design and manufacture of MilSpec AFFF and for the provision of warnings for the product.

4.      Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action to have its federal defense adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

5.      As a result, 3M is entitled to a federal forum to litigate its defense, including the nature and scope of the State's putative disavowal of any relief related to AFFF. The State's effort to split its claims does not and cannot limit 3M's available defenses in this case or 3M's entitlement to assert a federal government contractor defense.

## BACKGROUND

6.      This action is one of two putatively separate actions that the State filed against 3M and other Defendants seeking to address "environmental contamination and public health harm" across the State of Oklahoma allegedly caused by PFAS. *See* Am. Petition (Exhibit 1) ¶ 1, AFFF Complaint (Exhibit 2) ¶ 1.

7.      The State filed this PFAS action on August 5, 2025, in the District Court of Adair County, Oklahoma. This action was assigned Case No. CJ-25-65. The State filed an Amended Petition on September 5, 2025. The State previously filed a putative AFFF-only PFAS action on

January 21, 2024, in the United States District Court for the District of South Carolina. The AFFF case was assigned Case No. 2:24-cv-00308-RMG.

8.     In this action, the State generally alleges that Defendants, including 3M, have designed, manufactured, marketed, promoted, distributed, and/or sold PFAS and PFAS-containing products, including in Oklahoma. *See, e.g.*, Am. Petition ¶¶ 1–2, 28–35. The State further alleges that Defendants' PFAS have caused contamination of the State's natural resources, including the State's waters, and unspecified "harm" to consumers within Oklahoma. *Id.* ¶¶ 92–94, 110. The State asserts claims against 3M and other Defendants for violations of the Oklahoma Consumer Protection Act, 15 O.S. § 751 *et seq.* (*id.*, Count I); strict products liability–defective design (*id.*, Count II); strict products liability–failure to warn (*id.*, Count III); negligence (*id.*, Count IV); concealment and negligent misrepresentation (*id.*, Count V); and public nuisance (*id.*, Count VI).[1] The Amended Petition specifically alleges contamination "at *and from*" a Former Gulfstream Aerospace/Rockwell Automation site in Bethany, Oklahoma ("Specific Location"). *Id.* ¶¶ 11–17, 96–98 (emphasis added). Furthermore, the Amended Petition alleges that "the groundwater within a minimum of 4,000 feet west of" the Specific Location is contaminated from PFAS discharged from the Specific Location. *Id.* ¶¶ 15–17; 97. The Specific Location is now owned by Oklahoma City Airport Trust (OCAT) and is across the street from the Wiley Post Airport facility. *Id.* ¶¶ 12–13. Upon information and belief, the North Canadian River, also known as the Oklahoma River, is located approximately one mile west of the Specific Location. As alleged in the State's Amended Petition and shown in a map contained in the Amended Petition, groundwater within and surrounding the Specific Location flows towards the North Canadian

---

[1] The Amended Petition also asserts an actual and constructive fraudulent transfer claim against Defendants other than 3M. *See* Amended Petition, Count VII.

River, Am. Petition ¶ 16. Thus, PFAS from the Specific Location plausibly flows into the North Canadian River.

9.      The AFFF Complaint is based on substantially similar allegations of PFAS contamination of natural resources throughout Oklahoma, and it asserts many of the same causes of action and requests for relief. *See, e.g.*, AFFF Complaint ¶¶ 83–158, 171–186, & pp. 43–46. The State's AFFF Complaint generally alleges that Defendants, including 3M, have designed, manufactured, marketed, distributed, and/or sold PFAS-containing AFFF products which have caused contamination of the State's natural resources and property. *Id*. ¶¶ 1–8. The AFFF Complaint explicitly alleges that Defendants (including 3M) sold AFFF for use by the U.S. military at military installations throughout the State. *Id.* The AFFF Complaint specifically identifies military sites in Oklahoma where there is allegedly PFAS contamination from AFFF, including, but not limited to, Altus Air Force Base, Tinker Air Force Base, Kegelman Auxiliary Field at the Vance Air Force Base, and Will Rogers Army National Guard Base. *Id*. The AFFF Complaint further states that groundwater from the Tinker Air Force Base flows into the North Canadian River, and "the State alleges that PFAS contamination in the North Canadian River is from AFFF Products." *Id.* ¶ 60.c.

10.      In addition, both of the State's actions seek to recover for damages from two of the same, "mobile" PFAS chemicals that the State alleges to have been used by Defendants in the manufacture of AFFF: perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"). *See* Am. Petition ¶ 2, 42; AFFF Complaint ¶ 2.  PFOA and PFOS derived from AFFF (including MilSpec AFFF) and PFOA and PFOS from other sources are chemically indistinguishable from each other in the environment.

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE MET

11.    Venue for the removal of this action is proper in this Court pursuant to 28 U.S.C. §§ 116(b) and 1441(a) because the County of Adair is located within the Eastern District of Oklahoma.

12.    3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove the State's action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

13.    Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.2, true and accurate copies of the Amended Petition is attached as Exhibit 1. True and accurate copies of the documents on file in this case prior to the filing of this notice of removal (including all process, pleadings, and orders served upon 3M) are attached as Exhibits 3 – 25. A true and accurate copy of the state-court docket sheet is attached hereto as Exhibit 26.

14.    3M was served with the Petition and Summons on August 15, 2025. 3M was served with the Amended Petition on September 5, 2025. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

15.    Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of the District Court of Adair County.

16.    By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

17.     3M reserves the right to amend or supplement this Notice of Removal.

18.     If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL
## OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

19.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant plausibly alleges that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) the plaintiff's claims or injuries have a "connection or association" with the defendant's conduct undertaken pursuant to a federal officer's direction; and (d) it can assert a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022); *see also Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 254 (4th Cir. 2021); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135.

20.     Removal rights under the federal officer removal statute are much broader than removal under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21,

2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, § 1442 as a whole must be "liberally construed" in favor of removal. *Durham*, 445 F.3d at 1252 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)); *Maryland v. 3M Co.*, 130 F.4th 380, 388 (4th Cir. 2025) (noting that "'the ordinary presumption against removal does not apply' to federal officer removal" and that "[g]eneral removal principles are . . . inverted when § 1442(a)(1) is at issue.") *quoting Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 251 (4th Cir. 2021))).

21.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are—at least in part—caused by or related to MilSpec AFFF. *See, e.g.*, *Nessel*, 2021 WL 744683, at *3 (denying motion to remand in PFAS case against AFFF manufacturers because, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF, . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against AFFF manufacturers of MilSpec AFFF); *City of Irondale, Alabama v. 3M Co., Inc.*, No. 2:24-CV-01327-AMM, 2025 WL 2419238, at *6 (N.D. Ala. Aug. 19, 2025) (denying motion to remand and noting that for federal officer removal purposes, removal is proper so long as 3M has "put forth a **plausible** case that MilSpec AFFF is a **potential** source of [the plaintiff's] complained-of injury.") (emphasis in original). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation ("MDL") has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that the plaintiff's injuries are caused, at least in part, by MilSpec AFFF.

*See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("*AFFF I*"); Order at 3–5, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("*AFFF II*"); Order at 3–6, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("*AFFF III*"). Given its experience with the claims and defenses in the AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[2]

A. **MilSpec AFFF**

22.  In the late 1960s/early 1970s, the U.S. military began using MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the U.S. Naval Research Laboratory developed AFFF (with some assistance from industry participants), and its researchers were granted the first AFFF patent in 1966.[3] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

23.  The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5] All MilSpec AFFF products must be "qualified for listing on the applicable

---

[2] Following removal, 3M intends to designate this action for transfer to the MDL.

[3] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[4] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[5] The 1969 MilSpec and all its revisions and amendments through the April 2020 amendment (MIL-PRF-24385F(4)) are available at https://tinyurl.com/yxwotjpg.

Qualified Products List" prior to military procurement.[6] Prior to such listing, "a manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[7] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[8] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[9]

24.    From its inception until recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of PFAS chemicals that includes PFOA and PFOS.[10] Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[11] Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."[12]

---

[6] MIL-PRF-24385F(4) § 3.1 (2020).
[7] DoD, SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.
[8] DoD, SD-6, *supra note* 8, at 1.
[9] See, e.g., MIL-PRF-24385F(4) § 4.1 (2020).
[10] See Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." See MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.
[11] See MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).
[12] Id. § 6.6.

25.     3M manufactured and sold PFAS-containing MilSpec AFFF to the U.S. military for over three decades pursuant to contracts with the United States. One or more AFFF products manufactured by 3M were on the Navy's Qualified Products List for MilSpec AFFF from 1970 until 2010 (even though 3M had phased out production of AFFF beginning in 2000).[13]

26.     The U.S. military used MilSpec AFFF acquired from 3M at military facilities throughout the United States, including in Oklahoma, as alleged in the AFFF Complaint. *See* AFFF Complaint ¶ 60.

**B.     The Alleged PFAS Harms and Contamination Plausibly Derives from MilSpec AFFF**

27.     The State brought this case seeking to recover for generalized "harm" to Oklahoma consumers and for all damages to the State's natural resources "at *and from* the Specific Location" caused by PFAS. Am. Petition. ¶¶ 98, 110 (emphasis added). The Amended Petition also broadly alleges that it seeks to "hold Defendants accountable for the harms done to Oklahoma, its citizens, and its natural resources from Non-AFFF Products, including but not limited to PFOS and PFOA originating from the location set forth herein." Am. Petition. ¶ 20.  And the State incorrectly implies that PFOS and PFOA are "not connected with AFFF", *id.* ¶ 2, when in fact, PFOS and PFOA are two of the same PFAS at issue in the State's AFFF Complaint, AFFF Compl. ¶ 2. Critically, PFOS and PFOA from AFFF are chemically indistinguishable in the environment from PFOA or PFOS from other sources. Tellingly, the State cites a study of 3M's *AFFF* products for the broad proposition that PFAS chemicals allegedly cause harm, underscoring the identical nature of PFAS chemicals regardless of source. Am. Petition. ¶ 47. The State's citation to the AFFF study underscores that it cannot point to a specific, distinguishable alleged harm from non-

---

[13] See MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

AFFF PFAS and therefore incorporates allegations based on AFFF and harm from AFFF PFAS into all of its claims.

28.     Based on the broad allegations of the Amended Petition, the State's allegations encompass unspecified natural resources, including "springs, streams, and groundwater within its boundaries," *id.* ¶ 93 and harm and injury to "certain of the State's waters." *Id.* ¶ 94.  Upon information and belief, this plausibly includes contamination of the North Canadian River located approximately one mile west of the Specific Location and in the direction of groundwater flow the State itself alleges in the Amended Petition. The North Canadian River is the same water body that the State claims is contaminated with AFFF from the Tinker Air Force Base in the AFFF Complaint. AFFF Compl. ¶ 60.b. As alleged in the AFFF Complaint, AFFF from Tinker Air Force Base migrated through groundwater into the North Canadian River. *Id.* Because Tinker Air Force Base is a military facility, AFFF used on the base would be MilSpec AFFF, including at least some MilSpec AFFF sold by 3M.

29.     Since PFAS from the Specific Location plausibly traveled downstream in the North Canadian River where it would commingle with PFAS from MilSpec AFFF released at Tinker Air Force Base, at least part of the State's claimed contamination of its natural resources "at and from" the Specific Location includes contamination of the North Canadian River that credibly overlaps with chemically indistinguishable PFAS from MilSpec AFFF from Tinker Air Force Base. Accordingly, the PFAS chemicals that allegedly caused this harm to the State derive at least in part from the use, storage, and/or disposal of MilSpec AFFF at military facilities in

Oklahoma, and thus the State's claims to recover for the alleged PFAS contamination arise in part from MilSpec AFFF.

30.     Furthermore, the State's various general allegations of harm encompass statewide claims including various sites, resources, and entities not limited to the Specific Location, the only site specifically identified in the State's Amended Petition. Am. Petition ¶¶ 11, 94, 96. Other allegations in the Amended Petition encompass harm to "the environment" or "the State" generally. *See id.* ¶ 121 (complaining of damages from alleged release of PFOS and PFOA "into the environment, including" the Specific Location); *id.* ¶ 138 (alleging Defendants knew their actions "would result in harm to the State"); *id.* ¶ 177 (alleging Defendants breached their duty by allowing unspecified "entities within the State" to use PFAS products); *id.* ¶ 180 (same); *see also id.* ¶ 186 (alleging Defendants' actions "affects entire communities, neighborhoods, and a considerable number of persons."). These statements of generalized, statewide harm and broad references to natural resources including groundwater, surface water, springs, rivers and streams create a plausible basis of an overlap between the injuries alleged in the Amended Petition and alleged wide-ranging PFAS contamination in the AFFF Complaint that stem at least in part from MilSpec AFFF usage at multiple military facilities, including Altus Air Force Base, Tinker Air Force Base, Kegelman Auxiliary Field at Vance Air Force Base, and Will Rogers Air National Guard Base. *See* AFFF Compl. ¶ 60; *see also Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 189 (1st Cir. 2024) (noting that the alleged "indivisibility" of federal and non-federal services rendered by defendant under federal officer removal statute must be "credited in evaluating removal" as part of the defendant's "theory of the case.") (cleaned up).

31.     Because the alleged PFAS contamination for which the State seeks recovery in this action is (in part) plausibly attributable and/or related to MilSpec AFFF use at military

facilities in Oklahoma, 3M is entitled to remove this case as a whole pursuant to federal officer jurisdiction. That is because "[i]t is entirely possible that Plaintiffs' injuries occurred from actions taken while Defendants were acting under color of federal office: namely, MilSpec AFFF." *Nessel*, 2021 WL 744683, at *3; *see also Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020) ("[I]t is enough for the present purposes of removal that at least some of the pollution arose from the federal acts."). At a minimum, 3M is entitled to raise "the production of MilSpec AFFF as a defense or alternative theory" and, on that basis, to remove this case as a whole to federal court. *Nessel*, 2021 WL 744683, at *3..

32.     Federal officer removal is appropriate notwithstanding the State's attempt to allege that AFFF is not at issue in this case, because the State's claimed damages from PFAS are plausibly due in part to PFAS from MilSpec AFFF that overlap and are commingled with the alleged PFAS contamination from non-AFFF sources. *See Maryland*, 130 F.4th at 390–92; *Express Scripts, Inc.*, 119 F.4th at 180 (holding that defendant properly removed case under the federal officer removal statute, notwithstanding the plaintiff's alleged disclaimer of relief related to federal conduct, because "[t]o credit the disclaimer would permit [plaintiff] to recover based on what, when considering through [defendant's] theory of removal, were acts under a federal officer," and plaintiff's "attempts at artful pleading cannot serve as an end run around the federal officer removal statute"); *Id.* at 392 (noting that a factfinder would need to "decide . . . important causation and allocation questions" as to the nature of the PFAS contamination the State complains of, which are "merits questions that belong in federal court."); *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 7891 (D.S.C. Aug. 22, 2025) (finding efforts "to avoid the MDL and/or federal jurisdiction by denying, disclaiming, or omitting allegations concerning exposure to AFFF" to be "contrary to law" under *Maryland*); *Baker*, 962 F.3d at 944-

14

46 & n.3; *Nessel*, 2021 WL 744683, at *3 (denying State of Michigan's motion to remand and concluding that federal officer removal was proper notwithstanding the complaint's allegation that Michigan was not seeking relief for MilSpec AFFF; "The Court finds that Plaintiffs' artful pleading does not obviate the facts on the ground."); *AFFF III*, at 2–5 (acknowledging that the plaintiff had disavowed any claim to recover for damages from MilSpec AFFF, but denying the plaintiff's motion to remand and concluding that federal officer removal was proper because defendants showed that the contamination of the plaintiff's water supply was plausibly attributable to PFAS releases from the use of MilSpec AFFF). As the Seventh Circuit recently held, "[i]f the contamination came from AFFF, then the government contractor defense could apply. . . . even though the State's complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF." *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848 (7th Cir. 2024).

### C.    <u>All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied</u>

#### a.    *The "Person" Requirement is Satisfied*

33.    The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) meets the definition of "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes corporations. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); accord *Isaacson*, 517 F.3d at 135–36.

#### b.    *The "Acting Under" Requirement is Satisfied*

34.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 152 (2007); *Papp*, 842 F.3d at 812. The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer v. Foster Wheeler LLC*, 860

F.3d 249, 255 (4th Cir. 2017) (internal quotation marks omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255.

35.     The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination at issue in this action stems in part from MilSpec AFFF, a vital product provided by 3M that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[14] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also AFFF I*, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because

---

[14] Fulfilling the Roosevelts' Vision at 37.

defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); *AFFF II*, at 3–5; *AFFF III*, at 3–6.

36.    In designing, manufacturing, and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, MilSpec AFFF products were subject to various tests by the U.S. Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[15] 3M has satisfied the "acting under" requirement. *See, e.g.*, *Nessel*, 2021 WL 744683, at *3; *Ayo*, 2018 WL 4781145, at *8–9.

### c.    The "Under Color of Federal Office" Requirement is Satisfied.

37.    The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between plaintiff's claims and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. It is sufficient for a defendant to establish a "connection or association" between the lawsuit and the federal office. *Bd. of Cnty. Commissioners of Boulder Cnty.*, 25 F.4th at 1251; *see also Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35-36 (1st Cir. 2022) (explaining that 28 U.S.C. § 1442 permits removal of actions "for or relating to any act under color of [federal] office" (citing Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545)); *Agyin v. Razmzan*, 986 F.3d 168, 174 n. 2 (2d Cir. 2021) (noting that the 2011 amendment was meant "to broaden the universe of acts that enable Federal officers to remove to federal court") (citation omitted); *accord Sawyer*, 860 F.3d at 258; *Papp*, 842 F.3d

---

[15] See DoD, SD-6, *supra note* 8, at 1.

at 813; *Isaacson*, 517 F.3d at 137-38 (holding that it is sufficient if the act that allegedly caused the plaintiff's injuries occurred while the defendant was performing its official duties).[16]

38.    Here, the State's claims against 3M for alleged PFAS contamination of natural resources are for or relate to (at least in part) 3M's design, manufacture, and sale of MilSpec AFFF—which was designed and manufactured according to DoD military specifications, and which has been used, stored, and/or released at military facilities (and elsewhere) in Oklahoma. *See supra* ¶¶ 28–31. As a result, the State's claims against 3M relate to its acts taken under color of federal office. *See Maryland*, 130 F.4th at 391 (nexus element satisfied where 3M "plausibly alleged that PFAS intermingled to the point that it is impossible to identify their source," such that MilSpec AFFF "contributed to at least" part of the contamination); *Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); *AFFF I*, 2019 WL 2807266, at *3 (nexus element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products . . . for which the U.S. military imposes MilSpec standards."); *AFFF II*, at 5 (nexus element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); *AFFF III*, at 5–6 (same).

39.    Courts "credit Defendants' theory of the case" when determining whether the requisite nexus exists. *Isaacson*, 517 F.3d at 137; *Maryland*, 130 F. 4th at 389; *accord Express Scripts, Inc.*, 119 F.4th at 192 (holding that defendant properly removed based on federal officer removal statute and that the plaintiff's "disclaimer . . . did not justify remand" because the court had to "credit" the removing defendant's "theory of the case" that its federally authorized and

---

[16] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

non-federally authorized conduct were "indivisible"); *Agyin*, 986 F.3d at 175 ("Not only must the words of § 1442 be construed broadly but a court also must credit the defendant's theory of the case when evaluating the relationship between the defendants' actions and the federal officer" (internal quotation marks and brackets omitted)); *Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present"). As averred in this Notice of Removal, the State's alleged injuries plausibly arise at least in part from MilSpec AFFF. Crediting 3M's averments, the State's claims sufficiently connect to and are associated with 3M's actions under color of federal office.

>            **d.    The "Colorable Federal Defense" Requirement Is Satisfied**

40.    The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

41.    At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court]

19

only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

42.      Under the government contractor defense, the defendant is not liable for the design or manufacture of equipment or supplies (or for warnings relating to them) "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

43.      The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.[17] Those specifications are "reasonably precise," including in requiring the use of PFAS.[18] In addition, in the past and

---

[17] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 6, supra.

[18] As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that

continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. See *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

44.    With respect to the second requirement, 3M's products have appeared on the DoD Qualified Products List,[19] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. See Ayo, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); AFFF I, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

45.    Regarding the third requirement, the U.S. government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may

---

express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.
[19] See MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

raise environmental or human health issues.[20] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[21] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[22] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."[23] In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.[24] More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[25] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants,"[26] and recognizes that PFAS, including PFOS

---

[20] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002).

[21] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[22] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[23] EPA Presentation on Activities/Issues on Fluorosurfactants, March 16, 2001 (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-2 (D.S.C.)).

[24] *See* EPA, Revised Draft Hazard Assessment, *supra* note 21.

[25] DoD, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[26] MIL-PRF-24385F(4) § 3.2 (2020).

and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[27] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); *AFFF I*, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water").

46.     At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

47.     3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries to the State that were caused at least in part by 3M's compliance with military specifications, the State is attempting to use state tort law

---

[27] *Id.* § 6.6 & Tables I, III; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

48.     The MDL Court, based on an extensive record, has found that the government contractor defense asserted by 3M and other AFFF manufacturers presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition more than merely "colorable."

49.     Accordingly, 3M is entitled to remove this action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

## <u>CONCLUSION</u>

WHEREFORE, 3M hereby removes this action from the District Court of Adair County, Oklahoma, to this Court.

Dated: September 10, 2025                             Respectfully submitted,

**JURY TRIAL DEMANDED**                    /s/ Phillip G. Whaley
                                                        Phillip G. Whaley, OBA #13371
                                                        Stephen L. Jantzen, OBA #16247
                                                        Paula M. Jantzen, OBA #20464
                                                        RYAN WHALEY
                                                        400 North Walnut Avenue
                                                        Oklahoma City, OK 73104
                                                        (405) 239-6040
                                                        (405) 239-6766 FAX
                                                        pwhaley@ryanwhaley.com
                                                        sjantzen@ryanwhaley.com
                                                        pjantzen@ryanwhaley.com