# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| STATE OF OKLAHOMA *ex rel.* Gentner Drummond, Attorney General of Oklahoma, | MDL No. 2:18-mn-2873-RMG |
| | |
| *Plaintiff*, | CIVIL ACTION NO: |
| | |
| v. | 2:24- __00308-RMG__ |
| | |
| 3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company; | (Jury Trial Demanded) |
| AGC CHEMICALS AMERICAS INC.; | |
| ARCHROMA U.S., INC.; | |
| ARKEMA INC.; | |
| BASF CORPORATION; | |
| BUCKEYE FIRE EQUIPMENT COMPANY; | |
| CHEMDESIGN PRODUCTS, INC; | |
| CHEMGUARD, INC.; | **COMPLAINT** |
| CHEMICALS INC.; | |
| CLARIANT CORPORATION; | |
| CORTEVA, INC.; | |
| DEEPWATER CHEMICALS, INC.; | |
| DOES 1 through 25, inclusive; | |
| DUPONT DE NEMOURS INC., f/k/a DOWDUPONT, INC.; | |
| DYNAX CORPORATION; | |
| E.I. DUPONT DE NEMOURS AND COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise; | |
| THE CHEMOURS COMPANY, individually and as successor in interest to DuPont Chemical Solutions Enterprise; | |
| THE CHEMOURS COMPANY FC, LLC, individually and as successor in interest to DuPont Chemical Solutions Enterprise; and | |
| TYCO FIRE PRODUCTS L.P. | |
| | |
| *Defendants* | |

EXHIBIT
2

TABLE OF CONTENTS

COMPLAINT ................................................................................................................ 1

NATURE OF THE ACTION ......................................................................................... 2

JURISDICTION AND VENUE ..................................................................................... 3

PARTIES ....................................................................................................................... 4

FACTUAL ALLEGATIONS ....................................................................................... 16

    Properties of PFAS ................................................................................................... 16

    AFFF Products ......................................................................................................... 17

    Oklahoma's Natural Resources ............................................................................... 17

    PFAS From AFFF Products Has Impacted Oklahoma's Natural Resources ........... 18

    Defendants' History of Manufacturing and Selling PFAS- Containing AFFF Products .......... 21

CLAIMS FOR RELIEF ............................................................................................... 24

    COUNT I: STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN (All Defendants) ... 24

    COUNT II:  STRICT PRODUCTS LIABILITY – FAILURE TO WARN (All Defendants) . 28

    COUNT III: NEGLIGENCE (All Defendants) ....................................................... 30

    COUNT IV: CONCEALMENT & NEGLIGENT MISREPRESENTATION (All Defendants) ................................................................................................................ 33

    COUNT V: PUBLIC NUISANCE (All Defendants) .............................................. 37

    COUNT VI: TRESPASS (All Defendants) ............................................................ 38

    COUNT VII: FRAUDULENT CONVEYANCE; VIOLATION OF OKLAHOMA UNIFORM FRAUDULENT TRANSFER ACT (DuPont Defendants) .................................... 40

CLAIM FOR PUNITIVE DAMAGES ....................................................................... 42

PRAYER FOR RELIEF .............................................................................................. 43

REQUEST FOR JURY TRIAL .................................................................................. 46

Plaintiff, the State of Oklahoma ("State" or "Oklahoma"), acting by and through its Attorney General, Gentner Drummond, files this Complaint against the below described Defendants, as follows:

## NATURE OF THE ACTION

1.      Through this action, Oklahoma seeks damages, remediation, restoration, and other relief to address the environmental contamination and public health harm caused by Defendants' use of toxic per- and polyfluoroalkyl substances ("PFAS") in connection with Aqueous Film-Forming Foam ("AFFF").

2.      For decades, Defendants knew that the PFAS-containing fluorochemicals and fluorosurfactants used to make AFFF (collectively, "AFFF Products") that they manufactured, marketed, promoted, sold, and/or distributed to government entities, industrial customers, and consumers, including perfluorooctane sulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA") were persistent in the environment, bioaccumulative in living organisms, and toxic.

3.      Defendants further knew that PFAS present in AFFF was being discharged into the environment of Oklahoma during firefighting training as well as firefighting use at military bases, airports, fire training academies, refinery facilities, and other locations within the State.

4.      Despite this knowledge, Defendants continued to manufacture, market, promote, sell and/or distribute their AFFF to the United States government, the State, local governments, fire departments, businesses, and others for use in Oklahoma, without disclosing the significant risks of these chemicals to human health and the environment.

5.      Instead of taking steps to reduce these significant risks to human health and the environment, Defendants instead concealed them.

6.     Now that the State and the people of Oklahoma are becoming aware of some of the massive problems Defendants created, Defendants seek to pass the vast costs to address them back on the victims of their concealment: the taxpayers of Oklahoma.

7.     Pursuant to Okla. Stat. tit. 74 § 18b(A)(2)-(3), General Drummond, as the chief law officer of the State, is charged with prosecuting all actions in any of the federal courts in which the interests of the State are at issue.

8.     The State brings this action to hold Defendants accountable for the harms done to Oklahoma and its citizens' natural resources from Defendants' AFFF Products.

9.     Through this action, the State is *not* seeking damages, remediation, restoration, and/or other relief with respect to any contamination from PFAS that is *not* related to the manufacture and use of AFFF, as damages and/or equitable relief from those compounds that are *not* from the manufacture and use of AFFF will be the subject of a separate action.

## JURISDICTION AND VENUE

10.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1331 based on a federal question arising from the Government Contractor defense as raised and relied upon by the Defendants who moved to form the Multi-District Litigation ("MDL") No. 2873. Specifically, Defendants relied upon this federal question initially as a basis to remove cases from state courts across the country and ultimately as a basis to form the current MDL before this Honorable Court. In fact, this Honorable Court has issued Case Management Order No. 3 ("CMO 3") allowing for the direct filing of AFFF contamination lawsuits into the MDL. As the allegations alleged by the State of Oklahoma turn, in large part, on the use of AFFF at a variety of federally operated facilities, this matter falls directly into the category of cases to which the federal question at issue applies.

11.        Venue is appropriate in this judicial district pursuant to CMO 3. Plaintiff states that but for CMO 3 permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Eastern District of Oklahoma. Further, in accordance with CMO 3, Plaintiff hereby designates the United States District Court for the Eastern District of Oklahoma as the "Home Venue" as this case may have originally been filed there.

12.        The United States District Court for Eastern District of Oklahoma is a proper venue for this matter.

## PARTIES

### *PLAINTIFF*

13.        The State brings this action as an exercise of its authority to protect public trust resources and its police power, which includes, but is not limited to, its power to prevent pollution of the State's property and waters; to prevent and abate nuisances; and to prevent and abate hazards to public health, safety, welfare, and the environment.

### *DEFENDANTS*

14.        The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

15.        Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

16.        When reference is made in this complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives

of the defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of defendants, and did so while acting within the scope of their duties, employment or agency.

17.       **Defendant 3M Company (f/k/a/ Minnesota Mining and Manufacturing Company) ("3M")** is a Delaware Corporation and conducts business throughout the United States, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. 3M Company has designed, manufactured, marketed, promoted, distributed, and/or sold AFFF Products from the 1960s until 2002. 3M is registered to do business in Oklahoma.  At all times relevant, 3M has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant 3M's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

18.       Defendant **AGC Chemicals Americas, Inc. ("AGC")** is a Delaware corporation with its principal place of business at 5 East Uwchlan Avenue, Suite 201 Exton, Pennsylvania 19341. AGC designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, AGC has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State,

regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant AGC's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

19.     Defendant **Archroma U.S., Inc. ("Archroma")** is a Delaware corporation with its principal place of business at 5435 77 Center Drive, Suite 10, Charlotte, North Carolina 28217. Archroma is registered to do business in Oklahoma.  Archroma designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Archroma has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Archroma's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

20.     Defendant **Arkema, Inc. ("Arkema")** is a Pennsylvania corporation with its principal place of business at 900 First Avenue, King of Prussia, Pennsylvania 19406. On information and belief, Arkema was formerly known as Atochem, Inc. and/or is the successor-in-interest to Atochem, Inc. Arkema is registered to do business in Oklahoma.  Arkema designed,

manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Arkema has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Arkema's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

21.        Defendant **BASF Corp. ("BASF")** is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. BASF is a successor-in-interest to Ciba-Geigy Corp. BASF is registered to do business in Oklahoma.  BASF designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, BASF has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant BASF's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

7

22.     Defendant **Buckeye Fire Equipment Co. ("Buckeye")** is an Ohio corporation with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086. Buckeye designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Buckeye has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Buckeye's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

23.     Defendant **ChemDesign Products, Inc. ("ChemDesign")** is a Texas corporation with its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143. ChemDesign designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, ChemDesign has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant ChemDesign's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat.

tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

24.     Defendant **Chemguard, Inc. ("Chemguard")** is a Texas corporation with its principal place of business at 1 Stanton Street, Marinette, Wisconsin 54143. Chemguard designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Chemguard has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Chemguard's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

25.     Defendant **Clariant Corp. ("Clariant")** is a New York corporation with its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205. Clariant designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Clariant has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Clariant's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal

jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

26.    Defendant **Corteva, Inc. ("Corteva")** is a Delaware corporation with its principal place of business at 974 Centre Rd., Wilmington, Delaware 19805. Corteva designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Corteva has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Corteva's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

27.    Defendant **DuPont de Nemours, Inc. f/k/a DowDuPont, Inc. ("New DuPont")** is a Delaware corporation with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805. New DuPont is registered to do business in Oklahoma.  New DuPont designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, New DuPont has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant New DuPont's

10

contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

28.        Defendant **E.I. du Pont de Nemours and Co. ("Old DuPont")** is a Delaware corporation with its headquarters and principal place of business at 974 Centre Road Wilmington, Delaware 19805. Old DuPont designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Old DuPont has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Old DuPont's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

29.        Defendant the **Chemours Co.** is a Delaware corporation with its principal place of business at 1007 Market Street, Wilmington, Delaware 19889. Chemours Co. was previously a subsidiary of Old DuPont and was spun out of Old DuPont into an independent, publicly traded company on July 1, 2015. Chemours Co. designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Chemours Co. has purposefully availed itself of the privilege of conducting business in the State of Oklahoma,

11

has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Chemours Co.'s contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

30.      Defendant the **Chemours Co. FC, LLC ("Chemours Co. FC")** is a Delaware LLC with its principal place of business in Wilmington, Delaware. Chemours Co. FC, LLC is a wholly-owned subsidiary of Chemours Co. Chemours Co. FC was previously a subsidiary of Old DuPont and was spun out of Old DuPont into an independent, publicly traded company on July 1, 2015. Chemours Co. FC is registered to do business in Oklahoma. Chemours Co. FC designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Chemours Co. FC has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Chemours Co. FC's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

31.     Defendants the **Chemours Co. and the Chemours Co. FC** are jointly referred to herein as "**Chemours**." Chemours designed, manufactured, marketed, sold, and/or distributed fluorosurfactants containing or breaking down into PFAS for use in the manufacture of AFFF.

32.     Chemours, Corteva, New DuPont, and Old DuPont are referred to collectively as **"DuPont."**  For decades, DuPont manufactured products containing PFAS, including PFOA, which DuPont obtained from 3M. In the early 2000s, after 3M had ceased the manufacture of PFOS and PFOA, DuPont itself began to manufacture PFOA. DuPont designed, manufactured, marketed, sold, and/or distributed fluorosurfactants containing or breaking down into PFAS for use in the manufacture of AFFF.

33.     Defendant **Tyco Fire Products LP ("Tyco")** is a Delaware limited partnership with its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Tyco is the parent corporation to Chemguard and successor-in-interest to the Ansul Company. Tyco is registered to do business in Oklahoma.  Tyco designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Tyco has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Tyco's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

34.        Defendant **Chemicals Inc.** is a Texas corporation with its principal place of business at 12321 Hatcherville Road Baytown, Texas 77521. Chemicals Inc. designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Chemicals Inc. has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Chemicals Inc.'s contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

35.        Defendant **Deepwater Chemicals, Inc. ("Deepwater")** is a Delaware corporation with its principal place of business at 196122 E County Road 40, Woodward, Oklahoma 73801. Deepwater is registered to do business in Oklahoma. Deepwater designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Deepwater has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Deepwater's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process

Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

36.    Defendant **Dynax Corp. ("Dynax")** is a Delaware corporation with its principal place of business at 79 Westchester Avenue, Pound Ridge, New York 10576.  Dynax designed, manufactured, marketed, sold, and/or distributed AFFF products containing or breaking down into PFAS. At all times relevant, Dynax has purposefully availed itself of the privilege of conducting business in the State of Oklahoma, has transacted business in the State of Oklahoma, contracted to distribute and supply its products in the State, regularly caused its products to be sold in the State of Oklahoma, and this action arises out of and/or relates to Defendant Dynax's contacts with Oklahoma, including its having business transacted in Oklahoma, as well as tortious actions and/or omissions committed in whole or in part within Oklahoma, and specific personal jurisdiction is proper under one or more provisions of Okla. Stat. tit. 12, § 2004, as well as the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

37.    Fictitiously named Doe Defendants 1-25 unknown at this time, are manufacturers and distributors of AFFF Products, manufacturers of PFAS-containing fluorochemicals and fluorosurfactants used to make AFFF Products, and/or distributors of AFFF Products that have resulted in harms to public health and injuries to the State's natural resources, or otherwise share responsibility for such harms and injuries. When these Doe Defendants are identified, they will be added by name.

## FACTUAL ALLEGATIONS

*Properties of PFAS*

38.       PFAS are human-made chemicals consisting of a chain of carbon and fluorine atoms used in manufactured products, including, but not limited to, AFFF Products.

39.       The carbon-fluorine bond is one of the strongest bonds in chemistry and imparts to PFAS their unique chemical properties.

40.       The carbon-fluorine bond in PFAS generally does not occur in nature.

41.       PFAS have strong surfactant properties, meaning they reduce the surface tension between a liquid and another liquid or solid, and are thus effective for products which require fire resistance, and oil, stain, grease, and water repellency.

42.       The two most widely known and studied PFAS are PFOS and PFOA.

43.       On December 1, 2023, the International Agency for Research on Cancer (IARC), the cancer agency of the World Health Organization (WHO), announced that, after thoroughly reviewing the extensive published literature, a Working Group of 30 international experts from 11 countries was convened by the IARC Monographs program for a meeting on 7–14 November 2023 in Lyon, France and classified PFOS as possibly carcinogenic to humans (Group 2B) and PFOA as carcinogenic to humans (Group 1).

44.       The chemical structure of PFOS and PFOA, and other PFAS, makes them mobile and extremely resistant to breakdown in the environment.

45.       Indeed, scientists are unable to estimate an environmental half-life (i.e. the time it takes for 50% of the chemical to disappear) for PFAS.

46.       PFAS are known as "forever chemicals" because they are immune to degradation, bio-accumulate in individual organisms and humans, and increase in concentration up the food chain.

*AFFF Products*

47.    AFFF is one of the primary tools used by fire fighters for suppression of fires, include those involving oil and/or chemicals commonly found at the scene of transportation accidents, aircraft accidents, and chemical spills.

48.    AFFF is also used in structural or other types of non-chemical fires when water cannot penetrate deeply enough to ensure that unseen fire is extinguished.

49.    AFFF contains PFAS.

50.    AFFF is used in fire extinguishment in a manner typical of routine methods of fire extinguishment—by being sprayed through a fire hose, appliance, or nozzle.

51.    The techniques used for "laying a blanket" of AFFF in fire extinguishment include banking the foam off a wall or vertical surface to agitate the foam before it covers the fire, or applying it to the ground surface where the fire is burning. In structure fires, it can also be necessary to spray the ceilings, walls, and floors. Reapplication of foam is often necessary because the foam blanket will break down over a short time.

52.    The use of AFFF, whether because of training or fire suppression activities, can cause PFAS, including PFOS and PFOA, to be absorbed into the ground.

53.    Once in soils, PFAS are soluble and can be transported into surface water or leach into groundwater.

54.    Once introduced into groundwater or surface water, PFAS spread quickly because they easily dissolve in water.

*Oklahoma's Natural Resources*

55.    The State holds its waters in trust for the State's citizens and has an obligation to protect public interests in these waters through, among other things, maintaining the environmental quality of its waters.

56.        The State's natural resources include its waters, such as springs, streams, and groundwater within its boundaries or otherwise subject to its jurisdiction.

57.        The State owns lands throughout Oklahoma that it maintains for the benefit of the public, such as parks and wildlife management areas, as well as airports, ports, and firefighting training facilities.

**PFAS From AFFF Products Has Impacted Oklahoma's Natural Resources**

58.        PFAS contamination from AFFF Products has injured and continues to injure the State's waters, including, but not limited to, springs, streams, and groundwater, as well as the property of the State.

59.        As its investigation continues, the State expects that further PFAS contamination from AFFF Products will be discovered.

60.        PFAS from AFFF Products have significantly affected the natural resources in the State, including, the following known at this time:

a. In March of 2018, Altus Air Force Base ("Altus AFB") in Altus, Oklahoma was reported by the United States Department of Defense ("DOD") to have contained AFFF in thirteen areas on the base. According to its report, the DOD identified levels of combined PFOS and PFOA in groundwater on the AFB as high as 1,150,000 PPT in groundwater samples taken from AFFF Area 1, which is one of four former fire protection training areas on the AFB. Every groundwater sample from all thirteen areas detected levels of combined PFOS and PFOA that exceeded the EPA's then health advisory level of 70 PPT combined PFOS and PFOA.  Altus AFB is situated upon a shallow aquifer system, and groundwater in the system generally flows from northwest to southeast. The groundwater flow is locally influenced by incised streams, incised

drainage ditch channels, irrigation canals, and portions of the buried sanitary sewer line. Two surface water bodies cross Altus AFB- Stinking Creek and a southern unnamed tributary to Stinking Creek. Stinking Creek drains the northern and eastern portions of the AFB, and flows generally to the southeast. It is a tributary to the North Fork Red River. The southern unnamed tributary to Stinking Creek drains the housing area to the west and the southern part of Altus AFB, and flows southeast. Storm water runoff is controlled by a series of open drainage ditches that empty into Stinking Creek and/or the southern unnamed tributary to Stinking Creek. Upon information, belief, and a preliminary hydrogeologic analysis, the State alleges that PFAS contamination in Stinking Creek and/or the southern unnamed tributary to Stinking Creek is from AFFF Products.

b. In August 2017, the DOD also released a report detailing the Final Site Inspection for AFFF Areas at Tinker Air Force Base in Oklahoma County, Oklahoma. The Site Inspection involved investigation of twelve AFFF areas on the AFB. Levels of combined PFOS and PFOA were detected in groundwater at levels exceeding the EPA health advisory levels at almost all of the AFFF Release Areas except AFFF Area 8 (the site of a semi-truck crash in 2008) and AFFF Area 12 (Tinker AFB Golf Course, which was not sampled for groundwater). The highest detected level of combined PFOS and PFOA was 464,300 PPT in a groundwater sample taken from AFFF Area 3, an aircraft maintenance hangar that previously contained an AFFF system until approximately 2014. Groundwater on Tinker AFB generally flows toward the west or northwest, towards the North Canadian River (also known as the Oklahoma River) and its tributaries. Surface water on Tinker AFB drains into various creeks that eventually

19

merge with the North Canadian River. Upon information, belief, and a preliminary hydrogeologic analysis, the State alleges that PFAS contamination in the North Canadian River is from AFFF Products.

c.  In July 2018, the DOD released a Draft Final Report on the Site Inspection of Aqueous Film Forming Foam Release Areas from Kegelman Auxiliary Field (KAF), a sub-base of Vance AFB, in Alfalfa County, Oklahoma. Levels of combined PFOS and PFOA in groundwater from the Fire Training Pits on KAF (AFFF Release Area 6) were detected at levels as high as 46,400 PPT.  Upon information, belief, and a preliminary hydrogeologic analysis, the State alleges that PFAS contamination in groundwater downgradient from AFFF Release Area 6 at KAF, which is subsequently drawn by private wells and non-irrigation agricultural wells, is from AFFF Products.

d.  In December 2018, the Site Inspection Report for Perfluorooctane Sulfonate and Perfluorooctanoic Acid at Will Rogers Air National Guard Base (ANGB) in Oklahoma City, Oklahoma identified levels of PFOS and PFOA. Will Rogers ANGB was previously used as a training facility for the U.S. Army Air Forces and the 185th Fighter Squadron of Oklahoma Air National Guard, and is currently the home of the 137th Special Operations Wing. Shallow groundwater flows to the west-northwest and then to the north near the western edge of the ANGB. Levels of combined PFOS and PFOA were detected in groundwater at levels exceeding the EPA health advisory levels at all nine PRLs on the ANGB. The highest level of combined PFOS and PFOA was 13,300 PPT in a groundwater sample taken from PRL 3, a former fire station where AFFF was stored until about 1997.  Upon information, belief, and a preliminary hydrogeologic

analysis, the State alleges that PFAS contamination in groundwater near the vicinity of Will Rogers ANGB is from AFFF Products.

61.    As investigation of PFAS contamination continues, it is expected that additional contamination areas attributable to AFFF Products will be discovered on a location-by-location basis.

62.    Such investigation is necessary to ascertain the scope of PFAS contamination, identify those responsible for the contamination, and to return the affected natural resources to the condition they were in prior to the impact of these contaminants.

**Defendants' History of Manufacturing and Selling PFAS- Containing AFFF Products**

63.    Upon information and belief, since the 1960s, AFFF meeting MIL-F-24385 specifications were developed in coordination with the DOD to extinguish fires at military bases, airports, oil refineries, and firefighting training facilities throughout the United States by a number of manufacturers and/or their subsidiaries, including but not limited to Defendants 3M, Buckeye, Chemguard, and Tyco.

64.    Upon information and belief, the U.S. Department of Defense purchased AFFF exclusively from 3M and Tyco from the 1960s through 2001.

65.    Upon information and belief, Defendants DuPont, BASF, Dynax, Clariant, Chemours, Archroma, Arkema, ChemDesign, and AGC all designed, manufactured, marketed, distributed, and sold fluorosurfactant products for use as component products in the manufacture of AFFF.

66.    Upon information and belief, Defendants Chemicals, Inc. and Deepwater designed, manufactured, marketed, distributed, and sold products containing PFAS and/or their chemical precursors for use in the manufacture of AFFF and AFFF component products.

67.     Upon information and belief, the Defendants knew of the risks of PFAS to the environment and health.

68.     Indeed, Defendant 3M knew of the potential threats posed by AFFF by at least 1970.

69.     In the November 1970 issue of Fire Journal, the National Fire Protection Association (NFPA) published a letter by S.I. Kalkstein, the President of Chemical Concentrates Corporation titled "Toxicity of 'Light Water' to Fish,", which advised that tests of 3M's AFFF product demonstrated that it was so "highly deleterious to marine life . . . [that] the entire test program had to be abandoned to avoid severe local stream pollution."  Letters to the Association, Fire Journal, Nov. 1970, at 87.

70.     Indeed, a 1970 3M study revealed a lethal dose of PFAS in fish at 1ppm, the lowest concentration tested.  At this concentration, the fish were unable to swim upright and died within weeks of being exposed to PFAS.  The fish that received a dose of PFAS at 4ppm died within days; at 12.5 ppm the fish died within hours; and at 125 ppm the fish died within minutes.

71.     In response to Kalkstein's letter, Hugh G. Bryce,  the Technical Director of 3M's Chemical Division, wrote that 3M conducted  tests to evaluate the safety of its AFFF products and that "tak[ing] into account the remote possibility that significant quantities of the fire-extinguishing agent would enter a body of water, as well as the fact that relatively high levels can be tolerated, it appears from a practical point of view that the use of 'Light Water' brand agents could not have any significant adverse effect on fish or other marine life in either fresh or salt water."  *Id*.

72.     As leading manufacturers in the industry, the Defendants knew or should have known of the potential harmful effects of AFFF as Kalkstein advised in his letter.

73.     In 1975, 3M, the sole manufacturer of PFOS, learned that PFOS was present in the blood of the general population.  In 1976, 3M confirmed that PFAS was bioaccumulating in the blood of its employees.

74.     In 1978, 3M conducted a study of PFAS toxicity in Rhesus monkeys in which every monkey involved in the study died.

75.     3M repeated the Rhesus monkey experiment at a low dose of 4.5 ppm of PFAS, and still, every monkey involved in the study died.

76.     Upon information and belief, Defendant 3M continued to produce PFOS until 2002, and sold AFFF containing PFOS until 2003.

77.     After 3M exited the AFFF market, the remaining Defendants continued to manufacture and sell AFFF Products. Indeed, Old DuPont saw an opportunity to grab a share of the 3M's market when 3M exited, although Old DuPont had decades of evidence that PFAS were highly toxic and dangerous to the environment and human health.

78.     Upon information and belief, Old DuPont knew about the toxicity of PFOA as early as the 1960s and was aware that PFAS were capable of contaminating the environment.

79.     Defendants had a duty, which they breached, to notify the EPA when they had information that reasonably supported the conclusion that a substance or mixture presented a substantial risk of injury to health or the environment. *See* Toxic Substances Control Act ("TSCA") § 8(e), 15 U.S.C. § 2607(e).

80.     At all times relevant to this Complaint, no containment measures were listed in Safety Data Sheets ("SDS" (f/k/a/ Material Safety Data Sheets ("MSDS")), nor were the dangers to health or the environment inherent in AFFF disclosed in the instructions, warning labels, and product packaging for AFFF.

23

81.     MSDS for certain AFFF Products directed users to collect AFFF prior to discharging to a wastewater treatment system and/or to contain liquid materials containing PFAS to prevent spilled material from reaching sewers or waterways.

82.     At all times relevant to this Complaint, the MSDS and SDS instructions, warning labels and product packaging did not fully describe or adequately warn users of all of the health and environmental risks of AFFF, which Defendants knew or should have known existed, or of all of the precautions they should have taken, which Defendants knew or should have known existed and were necessary.

## CLAIMS FOR RELIEF

## COUNT I: STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN (All Defendants)

83.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

84.     At all times relevant to the Complaint, each of the Defendants was regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of AFFF Products.

85.     At all times pertinent to this Complaint, each of the Defendants regularly participated in placing their respective AFFF Products into the stream of commerce with actual and/or constructive knowledge that these products would be distributed to, and/or used within the State of Oklahoma.

86.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of AFFF Products, each of the Defendants had a duty to make and sell products that were, and are, reasonably fit, suitable, and safe for their intended or reasonably foreseeable uses. Each of the Defendants owed that duty both to reasonably foreseeable users of their respective

24

products, and also to any person or property that might reasonably be expected to come into contact with those products.

87.    Each of the Defendants owed a duty to all persons whom their respective products might foreseeably harm, including Plaintiff, not to manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses, including AFFF Products.

88.    Each of the Defendants' AFFF Products containing PFOS, PFOA, and/or their precursors was used in a reasonably foreseeable manner and without substantial change in the condition of each such product. These products were defective and unfit for their reasonable uses at the time they left each Defendant's respective possession or control. Each of the Defendants' AFFF Products foreseeably contaminated groundwater, surface water, sediments, soils, biota, and other State property and natural resources at and around the sites where those products were used.

89.    Each of the Defendants knew, or reasonably should have known, that their respective manufacture, marketing, and/or sale, as well as their respective customers' transport, storage, use, handling, release, spilling, and/or disposal of AFFF Products in an intended or reasonably foreseeable manner would result in the release of PFOS and PFOA into the environment, including at various locations in Oklahoma, contaminating groundwater, surface water, sediments, soils, biota, and other State property and natural resources.

90.    AFFF Products containing PFOS, PFOA, and/or their precursors used at various sites in Oklahoma have injured and are continuing to injure groundwater, surface water, sediments, soils, biota, and other State property and natural resources at and/or around these sites. Each of the Defendants' AFFF Products was defective in design and unreasonably dangerous because, among other things:

      a.    Each of the Defendants' AFFF Products cause extensive and persistent PFOS and PFOA contamination when used in a reasonably foreseeable and intended manner;

    b. PFOS and PFOA released into the environment from each of the Defendants' AFFF Products has caused contamination in groundwater and surface water that are the sources of drinking water and pose significant threats to public health and welfare; and

    c. Each of the Defendants failed to disclose reasonable, appropriate, or adequate scientific studies to evaluate the environmental fate and transport and potential ecological and human health effects of PFOS and PFOA.

91.    At all times relevant to this action, the AFFF Products that each of the Defendants designed, manufactured, marketed, and sold were dangerous to groundwater, surface water, sediments, soils, biota, and other State property and natural resources to an extent beyond that which would be contemplated by the ordinary consumer.

92.    At all times relevant to this action, the foreseeable risks to the environment, groundwater, surface water, sediments, soils, biota, and other State property and natural resources, as well as the public health and welfare, posed by each of the Defendants' AFFF Products containing PFOS, PFOA, and/or their precursors outweighed the cost to each of the Defendants of reducing or eliminating such risks in their respective products.

93.    At all times relevant to this action, each of the Defendants knew or should have known about reasonably safer and feasible alternatives to their AFFF Products, and the omission of such alternative designs rendered their AFFF Products not reasonably safe. While Defendants have recently transitioned to short-chain PFAS-based AFFF Products, which they claim are safer, they could have made this transition earlier. Moreover, AFFF Products can be designed with fluorine-free compounds, which do not contain or break down into PFAS.

94.    As a direct and proximate result of the defects in each of the Defendants' design, manufacture, marketing, and sale of AFFF Products containing PFOS, PFOA, and/or their precursors, groundwater, surface water, sediments, soils, biota, and other natural resources at and/or near the

various sites throughout Oklahoma where the AFFF Products were used have become contaminated with PFOS and/or PFOA, causing the State and its citizens significant injury and damage.

95.     As a direct and proximate result of each of the Defendants' respective acts and omissions, as alleged herein, the State has incurred, is incurring, and will continue to incur damages in an amount to be proved at trial related to PFOS and PFOA contamination of groundwater, surface water, sediment, soils, biota, and other State property and natural resources at and/or near the various sites throughout Oklahoma where Defendants' AFFF Products were transported, stored, used, handled, released, spilled, and/or disposed.

96.     As a further direct and proximate result of each of the Defendants' respective acts and omissions, the State has incurred, and will continue to incur, investigation, cleanup and removal, restoration, treatment, monitoring, and other costs and expenses related to contamination of the groundwater, surface water, sediments, soils, biota, and other natural resources at and/or near the various sites throughout Oklahoma where Defendants' respective AFFF Products were transported, stored, used, handled, released, spilled, and/or disposed, for which Defendants are strictly liable.

97.     Each of the Defendants knew it was substantially certain that its respective acts and omissions described above would cause PFOS and PFOA contamination of groundwater, surface water, sediment, soils, biota, and other natural resources at and/or near the various sites throughout Oklahoma where Defendants' AFFF Products were transported, stored, used, handled, released, spilled, and/or disposed and the other harms described herein.

98.     Each of the AFFF Products was in a defective condition when it left the respective Defendants' possession or control.

99.     The State and its citizens did not voluntarily expose themselves to the risks posed by AFFF Products.

100.    The State and its citizens did not realize the dangers posed by each of the Defendants' AFFF Products to the State's groundwater, surface water, sediment, soils, biota, and other natural resources and property.

101.    The State and its citizens did not unreasonably or knowingly expose themselves to the risk posed by each of the Defendants' respective AFFF Products.

102.    Each of the Defendants committed the above-described acts and omissions with actual malice or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.

103.    As a result of each of the Defendants' design and formulation of a defective product, each of the Defendants is strictly liable for all such damages arising out of contamination of the State's groundwater, surface water, sediments, soils, biota, and other State property and natural resources, and the State is entitled to recover all such damages and other relief as set forth below.

**COUNT II:  STRICT PRODUCTS LIABILITY – FAILURE TO WARN (All Defendants)**

104.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

105.    As designers, manufacturers, marketers, and sellers of AFFF Products containing PFOS, PFOA, and/or their precursors, each of the Defendants had a strict duty to the State and to those who were foreseeably at risk of being harmed by AFFF Products to warn users of those products and the State of the foreseeable harms associated with them.

106.    Each of the Defendants knew or should have known that exposure to AFFF Products presented a substantial danger when used because it is hazardous to human health and the environment.

107.    Each of the Defendants knew or should have known that the manner in which it was manufacturing, marketing, and selling its AFFF Products would result in harm to the State, including, but not limited to its groundwater, surface water, sediments, soils, biota, and other State property and natural resources.

108.    Ordinary consumers of the Defendants' AFFF Products would not have recognized the risks posed by those products, including, but not limited to those to the State's groundwater, surface water, sediments, soils, biota, and other State property and natural resources.

109.    Each of the Defendants failed to adequately warn the State of the likelihood that PFOS and/or PFOA would be released into the environment during the normal use of their respective AFFF Products and of the widespread, toxic, and persistent effects of such releases. Each of the Defendants failed to provide such warnings to (i) users and buyers of its AFFF Products containing PFOS, PFOA, and/or their precursors; (ii) the State; and (iii) others to which it was reasonably foreseeable Defendants' AFFF Products would cause harm.

110.    Adequate instructions and warnings on the AFFF Products could have reduced or avoided these foreseeable risks of harm to Plaintiff and its groundwater, surface water, sediments, soils, biota, and other State property and natural resources.

111.    Had the Defendants provided adequate warnings, the users and buyers of the products, the State, and others who would reasonably foreseeably transport, store, use, release, dispose, and/or otherwise handle or be harmed by the AFFF Products would have taken measures to avoid or lessen the exposure.

112.    The lack of sufficient warnings was a substantial factor in causing the groundwater, surface water, sediments, soils, biota, and other natural resources at and around various sites throughout

Oklahoma where the Defendants' respective AFFF Products were transported, stored, used, handled, released, spilled, and/or disposed to become contaminated with PFOS and PFOA.

113.    As a direct and proximate result of each of the Defendants' failure to warn of the hazards of AFFF Products containing PFOS, PFOA, and/or their precursors, the groundwater, surface water, sediments, soils, biota, and other natural resources at and around various sites throughout Oklahoma where the Defendants' respective AFFF Products were transported, stored, used, handled, released, spilled, and/or disposed have become contaminated with PFOS and PFOA.

114.    As a direct and proximate result of each of the Defendants' acts and omissions, the State has incurred, is incurring, and will continue to incur damages related to PFAS contamination from AFFF Products in an amount to be proven at trial.

115.    Each of the Defendants' acts and omissions was willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of persons who foreseeably might be harmed by those acts or omissions, including the State.

116.    Each of the Defendants is strictly liable for such damages to the State, and other relief as set forth below.

### COUNT III: NEGLIGENCE (All Defendants)

117.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

118.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, or handlers of AFFF Products, each of the Defendants had a duty to the State to ensure that PFOS and/or PFOA was not released as a result of the transport, storage, use, handling, release, spilling, and/or disposal of its AFFF Products and did not injure the environment, groundwater, surface water, sediments, soils, biota, and other State property and natural resources, as well as the

30

public health and welfare in Oklahoma. Each of the Defendants had a duty to the State to exercise due care in the design, manufacture, marketing, sale, testing, labeling, and instructions for use of its respective AFFF Products containing PFOS, PFOA, and/or their precursors.

119.    Each of the Defendants owed a duty to the State to exercise reasonable care in the instructing, labeling, and warning of the handling, control, use and disposal of its AFFF Products.

120.    Each of the Defendants breached these duties, by among other things, failing to conform to the requisite standard of care.

121.    Despite knowing that their respective AFFF products are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, each of the Defendants breached its respective duty of care to the State by failing to use reasonable care when it: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold AFFF Products; (b) issued instructions on how AFFF Products should be used and disposed of; (c) failed to recall and/or warn the users of AFFF Products of the dangers to human health and water and natural resources contamination as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF Products regarding the proper use and disposal of these products, notwithstanding the fact that each of the Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their respective AFFF Products.

122.    Each of the Defendants' respective negligent acts and/or omissions was a direct and proximate cause of the exposure to unsafe levels of fluorochemicals experienced by the State of Oklahoma's citizens, wildlife, groundwater, surface water, sediments, soils, biota, and other State property and natural resources.

123.   Each of the Defendants' respective (1) failure to act with reasonable care to design a product to perform safely; (2) failure to issue an adequate warning or instruction on the use of AFFF Products warning and; (3) failure to issue a recall, was a substantial factor in causing the State's groundwater, surface water, sediments, soils, biota, and other natural resources at and around various sites throughout Oklahoma to become contaminated with PFAS.

124.   Each of the Defendants knew, or reasonably should have known, that users and consumers would not realize the danger of their respective Defendants' AFFF Products posed to human health and the environment.

125.   A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

126.   Each of the Defendants was actually or constructively aware of the dangers of AFFF Products, and of their respective tortious acts or omissions, and, further, knew or should have known that their respective AFFF Products would, or was likely to, cause injury to groundwater, surface water, sediments, soils, biota, and other natural resources as a result of breaches of the above-noted duties. Nevertheless, with reckless indifference to these consequences, and as previously detailed, each of the Defendants negligently, recklessly, willfully, and/or wantonly breached its respective duties owed to Plaintiff through the acts of commission and/or omission described herein.

127.   The State's groundwater, surface water, sediments, soils, biota, and other natural resources at and around various sites throughout Oklahoma have become contaminated with PFAS as a direct and proximate result of each of the Defendants' negligent acts and/or omissions in designing AFFF products and in failing to warn the purchasers of AFFF, the State, and others

whom each of the Defendants should have reasonably foreseen would transport, store, use, handle, release, spill, and/or dispose AFFF Products of the harms posed by said products.

128.    The collective and respective acts and omissions of each of the Defendants were negligent, intentional, malicious, willful and/or wanton and in reckless disregard of persons who foreseeably might be harmed by those acts or omissions, including the State.

129.    As a direct and proximate result of each of the  Defendants' acts and omissions, the State has incurred, is incurring, and will continue to incur costs and expenses related to the investigation, clean up and removal, treatment, monitoring, and restoration of PFAS contamination from Defendants' AFFF Products for which each of Defendants is liable.

## COUNT IV: CONCEALMENT & NEGLIGENT MISREPRESENTATION (All Defendants)

130.    Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

131.    Each of the Defendants, individually and acting through its respective employees and agents, as well as in concert with one another, knowingly, intentionally, maliciously, willfully, wantonly, recklessly and/or negligently failed and/or refused to advise Plaintiff of the dangers and/or health risks posed by each of the Defendants' AFFF Products.

132.    Each of the Defendants, individually and acting through its respective employees and agents, as well as in concert with one another, negligently, knowingly, maliciously, willfully, wantonly, recklessly, and/or intentionally withheld, misrepresented, and/or concealed information regarding each of the Defendants' AFFF Products from the State, although the State had a right to know of information that would have prevented the widespread contamination of the Oklahoma's groundwater, surface water, sediments, soils, biota, and other natural resources with PFAS.

133.    For, at least, several decades, each of the Defendants had actual or constructive knowledge that their respective AFFF Products were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to AFFF Products and physical injuries in humans and animals.

134.    In connection with their respective AFFF Products, each of the Defendants have had and continue to have a duty of care to disclose to the State the actual and potential hazards to the State's groundwater, surface water, sediments, soils, biota, and other natural resources, as well as its persons.

135.    As a direct and proximate result of each of the Defendants' acts and/or omissions, the Defendants breached the duty to disclose owed to the State, exposing the State's citizens, wildlife, and natural resources to harmful levels of PFAS.

136.    Through each of the Defendants' superior knowledge, responsibility, and/or control over the AFFF Products, and each of the Defendants' voluntary actions and/or representations, a relationship of trust and confidence existed between each of the Defendants and Plaintiff.

137.    Despite each of the Defendants' respective knowledge regarding fluorochemical exposure, and despite each of the Defendants' duties to disclose to Plaintiff, each of the Defendants negligently, maliciously, knowingly, willfully, wantonly, recklessly and/or intentionally withheld, misrepresented, and/or concealed information from the State regarding harms associated with exposure to their AFFF Products with the intention to mislead the State into believing that their AFFF Products were not harmful, and to mislead entities within the State into continuing to use the AFFF Products.

138.    Each of the Defendants withheld, misrepresented, and/or concealed information regarding fluorochemical exposure, and such acts of omission and/or commission by each Defendant was a substantial factor in causing the harm to the Plaintiff described herein.

139.    As a direct and proximate result of the aforesaid acts and/or omissions by each of Defendants, acting for and on its own behalf and as agent, ostensible agent, employee, conspirator and/or joint venture of others, the State of Oklahoma's citizens, wildlife, and natural resources were exposed to each of Defendants' AFFF Products and were harmed.

140.    Each of the Defendants, individually and acting through its employees and agents, and in concert with each other, made misrepresentations and concealed facts material to Plaintiff and its citizens to induce them to purchase and use AFFF Products as set forth in detail above.

141.    Each of the Defendants knew, at the time that it made its respective misrepresentations, that such statements were false, made recklessly without knowledge of the truth, and/or had no reasonable ground for believing such assertions.

142.    Each of the Defendants intended that Plaintiff and its citizens would rely on its misrepresentations regarding the risks and efficacy of its AFFF Products.

143.    Each of the Defendants had, and continues to have, a duty of care to provide Plaintiff, with truthful representations regarding the actual and potential harm posed by its AFFF products, and each of the Defendants, as a direct and proximate result of each of the Defendants' respective acts and/or omissions, breached that duty owed to the Plaintiff.

144.    Each of the Defendants voluntarily assumed a duty of care to provide Plaintiff with truthful representations regarding its respective AFFF Products and the actual and potential harm posed by said products, and, as a direct and proximate result of each of the Defendants' respective acts and/or omissions, breached that duty owed to the Plaintiff. Each of the Defendants' affirmative

representations and/or omissions to Plaintiff was false and was material to Plaintiff in forming the belief that the Defendants' respective AFFF Products were safe, in causing Plaintiff to continue to allow entities within the State to use AFFF Products, and in causing Plaintiff to not previously seek remediation and/or ways to remedy the past and continuing contamination of the groundwater, surface water, sediments, soils, biota, and other natural resources within the State by AFFF Products.

145.    Each of the Defendants made the affirmative representations and/or omissions to Plaintiff with the intention that Plaintiff would be misled into relying on such affirmative representations and/or omissions.

146.    Plaintiff relied on each of the Defendants' affirmative representations and/or omissions in forming the belief that the Defendants' respective AFFF Products were safe, in causing Plaintiff to continue to allow entities within the State to use AFFF Products, and in causing Plaintiff to not previously seek remediation and/or ways to remedy the past and continuing contamination of the groundwater, surface water, sediments, soils, biota, and other natural resources within the State by AFFF Products.

147.    Plaintiff was harmed as a direct and proximate result of its justified reliance on each of the Defendants' affirmative, tortious representations and/or omissions and, as a direct and proximate result of such justified reliance, Plaintiff continued to allow entities within the State to use the AFFF Products.

148.    Defendants' repeated and continuing conduct was willful, wanton, and malicious and was directed at the public generally. As a result, the State seeks to recover punitive damages against Defendants.

**COUNT V: PUBLIC NUISANCE (All Defendants)**

149.    Plaintiff incorporates the allegations set forth above as if they were fully set forth herein.

150.    Each of the Defendants, individually and acting through their employees and agents, and in concert with each other, have intentionally, recklessly, or negligently engaged in conduct or omissions which endanger or injure the property, health, safety, and/ or comfort of a considerable number of persons in those areas impacted by their production, promotion, and marketing of AFFF Products.

151.    Each of the Defendants' tortious conduct, misrepresentations and omissions regarding AFFF Products, as set forth above, has created an irreversible ecological crisis in those areas impacted that constitutes a public nuisance. Defendants have created a crisis that simultaneously affects entire communities, neighborhoods, and a considerable number of persons.

152.    Each of the Defendants has violated a public right, that is, the right to the public good, such as an indivisible resource shared by the public at large in the State's groundwater, surface water, sediments, soils, biota, and other natural resources.

153.    Defendants did not uphold their responsibility to put a lawful, non-defective product into the market. Rather, Defendants' introduction of AFFF Products into the market was inconsistent with USEPA guidelines.

154.    The Defendants' misrepresentations and omissions regarding AFFF Products constitute unlawful acts and/or omissions of duties, which annoy, injure, or endanger the comfort, repose, health, and/or safety of others, and offend decency to a considerable number of persons in those areas impacted.

155.   The Defendants have a duty to abate the nuisance they created.

156.   The Defendants have failed to abate the nuisance they created.

157.   Defendants' conduct directly and proximately caused the State's groundwater, surface water, sediment, soils, and biota at and around various sites throughout Oklahoma to become contaminated with PFAS.

158.   As a direct result of the Defendants' conduct, the State has suffered economic damages including, but not limited to, costs and expenses the State has incurred, is incurring, and will continue to incur related to the investigation, clean up and removal, treatment, monitoring, and restoration of PFAS contamination from Defendants' AFFF Products for which Defendants are liable.

## COUNT VI: TRESPASS (All Defendants)

159.   Plaintiff incorporates the allegations set forth above as if they were fully set forth herein.

160.   Each of the Defendants' intentional and/or negligent conduct caused AFFF Products containing PFOA, PFOS, and/or their precursors, to enter, invade, intrude upon, injure, trespass, and threaten to trespass upon the State's possessory interest in properties it owns, including but not limited to State lands, parks, wildlife management areas, tidal bodies of water, and certain lakes.

161.   AFFF Products containing PFOA, PFOS, and/or their precursors, manufactured and/or supplied by Defendants continue to be located on or in the State's property.

162.   Each of the Defendants intended to manufacture AFFF Products containing PFOA, PFOS, and/or their precursors, and knew with substantial certainty that their acts would contaminate the State's property.

163.   Each of the Defendants is therefore liable for trespass and continued trespass.

164.     Each of the Defendants did not and does not have authority, privilege, or permission to trespass upon the aforesaid possessory property interests.

165.     The State has never consented to the trespasses alleged herein.

166.     Each of the Defendants has refused and failed to terminate their trespasses, despite being put on notice to do so by the State through its policies, statutes, regulations, orders, and other means.

167.     Each of the Defendants' trespass is of a continuing nature and has produced a long-lasting negative effect upon the property of the State, and each Defendant knew or had reason to know of this adverse effects all times relevant hereto.

168.     Based on their conduct, each of the Defendants has, at all times relevant to this action, created, caused, maintained, continued, substantially contributed to, substantially participated in, and/or assisted in the creation of such trespass. Based on their respective knowledge of the properties and manner of distribution and storage of AFFF Products containing PFOA, PFOS, and/or their precursors, as alleged herein, each of the Defendants was aware, or should have been aware, that, as a result of its conduct, contamination of the State's property was inevitable or substantially certain to result.

169.     As a direct and proximate result of each of the Defendants' conduct, the State has suffered and continued to suffer damages from Defendants' conduct and the presence of AFFF Products containing PFOA, PFOS, and/or their precursors, in the State's property, including without limitation costs to assess, investigate, monitor, analyze and remediate contamination, costs to prevent AFFF Products from injuring additional property of the State, and costs to restore and replace the State's impacted natural resources whose use has been lost or degraded.

170.    As a direct and proximate result of each of the Defendants' acts and omissions, the State has incurred and suffered, and will continue to incur and suffer, substantial costs and damages for which Defendants are liable.

### COUNT VII: FRAUDULENT CONVEYANCE; VIOLATION OF OKLAHOMA UNIFORM FRAUDULENT TRANSFER ACT (DuPont Defendants)

171.    Plaintiff incorporates the allegations set forth above as if they were fully set forth herein.

172.    Plaintiff seeks all relief available under the Oklahoma Uniform Fraudulent Transfer Act (the "Act") for the DuPont Defendants' violations of the Act for their fraudulent conveyances as part of their various spin-off transactions.[1]

173.    Pursuant to the Oklahoma Uniform Fraudulent Transfer Act, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation," with "actual intent to hinder, delay, or defraud any creditor of the debtor," or "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation," provided the debtor "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 24 Okla. St. § 116.

174.    Additionally, under the Act, "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably

---

[1] As previously defined, the "DuPont Defendants" refers to all DuPont entities named herein, including Defendant Corteva, and all Chemours entities named herein.

40

equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." 24 Okla. St. § 117(a).

175.    The DuPont Defendants engaged in acts in furtherance of a scheme to transfer DuPont's assets so that parties in PFAS litigation, such as Plaintiff, could not obtain funds or collect a judgment which they are or will be owed. As a result of the DuPont Defendants' acts, omissions, and other conduct described herein, Plaintiff has been damaged.

176.    At all relevant times, the DuPont Defendants have (1) acted with actual intent to hinder, delay, and defraud parties; (2) acted without receiving a reasonably equivalent value in exchange for the transfer obligation arising out of the DuPont-Chemours spin-off; and/or (3) were engaged or were about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business or that the business intended to incur, or those liabilities the DuPont Defendants believed or reasonably should have believed that Chemours would incur.

177.    For decades, DuPont manufactured, marketed, distributed, and/or sold PFAS for use in AFFF products with the superior knowledge that they were toxic, mobile, persistent, bioaccumulative, and biomagnifying, and through normal and foreseen use, would impact Plaintiff's citizens, wildlife, water sources, and other natural resources.

178.    As a result of the transfer of assets and liabilities described herein, the DuPont Defendants have attempted to limit the availability of assets to cover judgments for all of the liability for damages and injuries from their manufacture, marketing, distribution, and/or sale of AFFF containing PFAS and/or PFAS for use in AFFF.

179.    At the time of the transfer of its performance chemical business to Chemours, DuPont had been sued, had notice of suits, and/or had knowledge of likely litigation regarding

DuPont's liability from the manufacture, marketing, distribution, and/or sale of AFFF containing PFAS and/or PFAS compounds for use in AFFF.

180.    The DuPont Defendants acted without receiving consideration and/or a reasonably equivalent value in exchange for the transfer or obligation, and DuPont believed or reasonably should have believed that Chemours would incur debts beyond Chemours' ability to pay when those debts became due.

181.    The claims, judgment, and potential judgments against Chemours potentially exceed its ability to pay. Accordingly, Plaintiff seeks avoidance of the transfer of DuPont's liabilities for the claims brought herein and seeks to hold the DuPont Defendants liable for any damages or other remedies that may be awarded by the Court or jury arising from this Complaint. Plaintiff further seeks all other rights and remedies that may be available to it under the Oklahoma Uniform Fraudulent Transfer Act, including prejudgment remedies as available under applicable law, as may be necessary for full compensation of damages and injuries Plaintiff has suffered as alleged herein.

## CLAIM FOR PUNITIVE DAMAGES

182.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

183.    Each of the Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused Plaintiff's citizens, wildlife, and natural resources to be exposed to and contaminated with AFFF Products.

184.    The willful, wanton, malicious, and/or reckless conduct of each of the Defendants, includes, but is not limited to:

a.  issuing no warnings and failing to divulge material information concerning the release of PFAS, including, but not limited to PFOA and PFOS;

b.  failing to take all reasonable measures to ensure AFFF Products would be used effectively and properly disposed of; and

c.  failing to prevent the foreseeable impacts of PFAS contamination upon the Plaintiff.

185.  Each of the Defendants acted with malice, purposely, and intentionally. At a minimum, each of the Defendants engaged in the conduct alleged herein with a conscious disregard for the rights and safety of other persons, even though that conduct had a great probability of causing substantial harm.

186.  Plaintiff is entitled to punitive damages in addition to actual damages from Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff, STATE OF OKLAHOMA seeks judgment against these Defendants as follows:

a.  Finding Defendants liable for all costs, in an amount that exceeds $75,000.00, (i) to collect, return, and dispose of existing stocks of Defendants' AFFF Products; (ii) to investigate, clean up and remove, restore, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the sites throughout Oklahoma where Defendants' AFFF Products were transported, stored, used, handled, released, spilled, and/or disposed so the contaminated natural resources are restored to their original condition;

b.  Finding Defendants liable for all damages, in an amount that exceeds $75,000.00, to compensate the citizens of Oklahoma for the lost use and value of its natural resources during

all times of injury caused by AFFF Products, and for such orders as may be necessary to provide

full relief to address risks to the State, including, but not limited to, the costs of:

      i.      Past and future testing of natural resources at and around the sites throughout Oklahoma where Defendants' AFFF Products were transported, stored, used, handled, released, spilled, and/or disposed and, thus, likely caused PFOS and/or PFOA contamination;

      ii.      Past and future treatment of all natural resources at and around the sites throughout Oklahoma where Defendants' AFFF Products were transported, stored, used, handled, released, spilled, and/or disposed and which contain detectable levels of PFOS and/or PFOA until restored to non-detectable levels;

      iii.      Past and future monitoring of the State's natural resources at and around the sites throughout Oklahoma where Defendants' AFFF Products were transported, stored, used, handled, released, spilled, and/or disposed as long as there is a detectable presence of PFOS and/or PFOA, and restoration of such natural resources to their pre-discharge condition;

      c.      Ordering Defendants to pay for all costs, in an amount that exceeds $75,000.00,

related to damages arising from PFAS contamination of natural resources, public trust resources,

groundwater, release sites, public drinking water supply wells, private drinking water supply wells,

and other State and public properties and waters at and around sites throughout Oklahoma where

Defendants' AFFF Products were transported, stored, used, handled, released, spilled, and/or

disposed, according to proof, including, *inter alia*:

      i.  costs of investigation;

      ii.  costs of testing and monitoring;

      iii.  costs of providing water from an alternate source;

      iv.  costs of installing and maintaining wellhead treatment;

      v.  costs of installing and maintaining wellhead protection program;

      vi.  costs of installing and maintaining an early warning system to detect PFAS before it reaches wells;

vii.  costs of implementing biomonitoring programs for water, soil, air, and all other impacted environmental media in communities and other areas where surface water and/or groundwater sources have become contaminated by PFAS;

viii.  costs of remediating PFAS from natural resources, including groundwater, surface waters, soils, sediments, and other natural resources;

ix.  costs of remediating PFAS contamination at release sites and statewide;

x.  costs of implementing educational outreach in communities and other areas where surface water and/or groundwater sources have become contaminated by PFAS;

xi.  costs of collecting and safely disposing of existing AFFF from sites around the State;

xii.  loss of tax revenue and other economic benefits;

xiii.  costs of designing, implementing, and operating biomonitoring programs and studies and costs to otherwise assess PFAS public health impacts for all residents of the State;

xiv.  costs for outreach, education, community engagement, and additional public health studies, assessments, and measures;

xv.  any other costs or other expenditures incurred to address PFAS contamination and injury; and

xvi.  interest on the damages according to law;

d.  Equitable relief, including abatement of the nuisances complained of herein;

e.  Punitive damages;

f.  Costs (including reasonable attorneys' fees, court costs, and other expenses of litigation);

g.  An order voiding the Chemours Transfers and recovering property and value transferred to Old DuPont;

h.  An order voiding the Old DuPont Transfers and recovering property and value transferred to New DuPont;

i.  An order voiding the Old DuPont Transfers and recovering property and value

45

transferred to Corteva;

      j.      An order enjoining New DuPont, as transferee, from distributing, transferring, capitalizing, or otherwise disposing of any proceeds from the sale of any business lines, segments, divisions, or other assets that formerly belonged to Old DuPont;

      k.      An order enjoining Corteva, as transferee, from distributing, transferring, capitalizing, or otherwise disposing of any proceeds from the sale of any business lines, segments, divisions, or other assets that formerly belonged to Old DuPont;

      l.      An order imposing constructive trust over the proceeds of the Chemours Transfers to Old DuPont for the benefit of the State;

      m.      An order imposing constructive trust over the proceeds of the Old DuPont Transfers to New DuPont for the benefit of the State;

      n.      An order imposing constructive trust over the proceeds of the Old DuPont Transfers to Corteva for the benefit of the State; and

      o.      For such and other relief as the Court may deem proper.

## <u>REQUEST FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial on all causes of action for which a jury is available under the law.

[*signature block on next page*]

**GENTNER DRUMMOND**
**ATTORNEY GENERAL OF OKLAHOMA**

GENTNER DRUMMOND, OBA #16645
*Attorney General*
ETHAN SHANER, OBA #30916
*Deputy Attorney General*
JENNIFER L. LEWIS, OBA #32819
*Deputy Attorney General*
Oklahoma Office of the Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
ethan.shaner@oag.ok.gov
jennifer.lewis@oag.ok.gov

S. ALEX YAFFE, OBA #21063
ERIC J. CAVETT, OBA #22098
FOSHEE & YAFFE
12231 South May Avenue
P.O. Box 890420
Oklahoma City, OK 73189
Telephone: (405) 378-3033
Facsimile: (405) 632-3036
ay@fylaw.com
ejc@fylaw.com

And

MATTHEW J. SILL, OBA #21547
FULMER SILL
1101 N. Broadway Ave., Ste. 102
Oklahoma City, OK 73103
Telephone: (405) 509-6300
Facsimile: 1-800-978-1345
msill@fulmersill.com

/s/ T. David Hoyle
JOSEPH F. RICE, D.S.C. No. 3445
FRED THOMPSON, III, D.S.C. No. 4081
T. DAVID HOYLE, D.S.C. No. 9928
REBECCA FONSECA, D.S.C. No. 13297
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
jrice@motleyrice.com
fthompson@motleyrice.com
dhoyle@motleyrice.com
rfonseca@motleyrice.com

And

LINDA SINGER, DC BAR NO. 502462
MOTLEY RICE LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Telephone: (202) 232-5504
Facsimile: (202) 232-5513
lsinger@motleyrice.com

Dated: January 21, 2024